<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., | : |
|           Plaintiff, | : Civil Case No. 11-4933 (FSH) (PS) |
| v. | : **OPINION & ORDER** |
| JOSEPH L. FARINA, *et al.* | : January 10, 2012 |
|           Defendants. | : |

<u>**HOCHBERG, District Judge:**</u>

**I.     INTRODUCTION**

Plaintiff, Hunt Construction Group, Inc., brings this action seeking to collect a judgment it obtained against Titan Stone Tile & Masonry, Inc. ("Titan (NJ)") from various individuals and entities that plaintiff contends are alter egos of Titan (NJ) and of each other.  Defendants Joseph L. Farina ("Farina Sr."), Jeffrey Farina, J.F. Management, Inc. (NJ), Titan Equipment Company, Inc. (NJ), J.L.F. Realty, LLC (NJ), Titan Realty, LLC, J. Five Realty, LLC, Harrison Professional Center, LLC, Titan Interiors, LLC, Exterior Wall Systems, Inc., 47-49 Clinton Road Corp., Titan Stone, Tile & Masonry of Florida, LLC; Titan Equipment, LLC (FL), J.F. Management, Inc. (FL), J.L.F. Realty, LLC (FL), GRA-MAR Realty, LLC (FL) and Titan Stone, LLC (FL) seek the dismissal of the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.    ALLEGATIONS**

Plaintiff alleges that the defendants caused Titan (NJ) to become insolvent while engaging in an elaborate scheme of siphoning funds and transferring assets of Titan (NJ) into a series of companies in New Jersey and Florida.  Complaint at ¶ 1.  Plaintiff is a construction firm and general contractor that subcontracted work to Titan (NJ) in connection with the construction of a library.  *Id*. at ¶ 28.  Plaintiff and Titan (NJ) became involved in a lawsuit arising out of the library project beginning in 2005 and in 2008, after a trial on the merits, plaintiff obtained two judgments against Titan (NJ).  *Id*. at ¶¶ 29-31.  Titan (NJ) was held solely liable for one of the judgments and was held jointly and severally liable for the other judgment with International Fidelity Insurance Company ("IFIC"), which had provided a surety bond to Titan (NJ).  *Id*. at ¶¶ 30-31.  IFIC then paid the judgment for which it was held jointly liable.  *Id.* at ¶ 32.  Titan (NJ) has not paid the judgment for which it was held solely liable and plaintiff now seeks to recover that judgment from defendants on the theory that they are alter egos of Titan (NJ) and of each other.  *Id*. at ¶¶ 1, 32-34.

Plaintiff alleges that each of the defendant companies was formed by a member of the Farina family and managed by one or more members of that family.  Complaint ¶¶ 35-37, 41-45, 51-56, 58.  Plaintiff alleges that all of the New Jersey corporate defendants maintained an address at 70 Supor Boulevard in Harrison, NJ and that all of the Florida corporate defendants maintained an address at 730 NW 7th St., Ft. Lauderdale, Fl.  *Id*. at ¶¶ 38, 46, 54, 59.  Plaintiff further alleges that any corporate records maintained by the corporate defendants were maintained at one of those two addresses; that all of the corporate defendants were founded with little or no capital and are undercapitalized; that all of the corporate defendants were operated with funds commingled with Titan (NJ) and the other defendants; and upon information and

belief, that none of the corporate defendants held meetings of shareholders, members, officers or directors.  *Id*. at ¶¶ 46-49; 59-62.

Plaintiff alleges that the corporate defendants had very limited functions and assets.  For example, plaintiff alleges that J.F. Management, Inc. (NJ) was formed to employ the office personnel for Titan (NJ) and that Titan Equipment Company, Inc. (NJ) was formed to hold title to all of the equipment of Titan (NJ).  *Id.* ¶ 36.  Plaintiff also alleges that several of the corporate defendants were formed for the sole purpose of holding individual pieces of real estate owned by Farina Sr. or purchased with Titan (NJ) funds.  *Id*.  at ¶¶ 40-43.

Plaintiff also provides a number of factual allegations about the financial relationship between the corporate defendants.  For example, plaintiff alleges that defendant Titan Realty was formed by the Farinas and that Farina Sr. conveyed to Titan Realty a building on the property where the fabricating plant and warehouse for Titan (NJ) were maintained.  *Id*. at ¶ 41.  Plaintiff further alleges that defendant J. Five Realty was formed for the purpose of purchasing real property located at 775 Harrison Ave, in Kearny, NJ.  *Id.* at ¶ 42.  Plaintiff further alleges that defendant Harrison Professional was formed by the Farinas for the purpose of purchasing real property located at 62 Essex Street in Harrison, NJ.  *Id.* at ¶ 43.  Plaintiff alleges that all three of these companies were shell companies that were formed with Titan (NJ) funds and served no legitimate business purposes beyond holding the three properties.  *Id*. at ¶¶ 40-43, 67-69.  Plaintiff alleges that beginning in 2005, Farina Sr. began selling off properties owned by the Farina family companies, including the properties owned by the alleged shell companies started with Titan (NJ) funds, and did not account for the proceeds of those sales.  *Id.* at ¶¶ 66-69.  Plaintiff specifically alleges that in 2005 and 2006, defendants Harrison Professional, J. Five

Realty, and Titan Realty sold the three properties described above to non-parties for a total of $13,625,000. *Id*.

Plaintiff notes that this is the third lawsuit filed against the defendants on a veil-piercing theory. The first was filed by a member of the Farina family, Joseph Farina Jr. Farina Jr. alleged that Farina Sr. was fraudulently transferring assets of various companies to himself and that the companies served no legitimate business purposes. The second was filed by IFIC and it also alleged improper asset transfers involving many of the same defendants named in the present action. Plaintiff does not describe the outcome of the prior veil-piercing actions against the Farina family and its companies, but does observe that the prior actions were not dismissed and did not result in defense judgments.

## III.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

## IV.    DISCUSSION

"Piercing the corporate veil is an equitable remedy through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form."  *The Mall at IV Group Props., LLC v. Roberts*, 2005 U.S. Dist. LEXIS 31860 at *8 (D.N.J. 2005).  Under New Jersey law, a two element test applies to veil-piercing claims: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *Id*.

With respect to the first element, courts consider a number of factors including: "gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders."  *Id*. (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir. 1988) (applying New Jersey law)).  With respect to the second element, although a wrong is required, a plaintiff "need not prove common law fraud . . . but rather must meet the

less rigid standard of 'fraud, injustice, or the like.'" *Id.* (quoting *Kuibyshevnefteorgsynthez v. Model*, 1995 WL 66371 at 15 (D.N.J. Feb. 6, 1995)); *State of N.J. Dep't of Env'tl Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (N.J. 1983).

Courts may pierce the corporate veil either to make a "'corporation's individual principals and their personal assets liable for the debts of the corporation'" or to make "'assets of the corporate entity'" available to "'satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one and the same.'" *Repetti v. Vitale*, 2011 N.J. Super. Unpub. LEXIS 2390, *15-16 (N.J. Super. Ct. App. Div. Sept. 9, 2011) (quoting *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999)). The same factors are applied with respect to both types of veil piercing. *Id*. at * 16-17.  Finally, "[t]he issue of whether the corporate veil . . . can be pierced is primarily a question of fact." *Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC*, 2011 U.S. Dist. LEXIS 46767 at *11 (D.N.J. April 29, 2011); *Melikian v. Corradetti*, 791 F.2d 274, 282 (3d Cir. 1986).

Defendants argue that the complaint should be dismissed because the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to plaintiff's allegations and plaintiff has failed to directly link each defendant to fraudulent conduct with particularity. *See Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n. 10 (3d Cir. 2002) ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)."). Defendants argue that plaintiff's allegations regarding both the individual and corporate defendants fall short of the specificity required by Rule 9(b). Defendants contend that plaintiff has provided no factual support for its allegation that the members of the Farina family engaged in an elaborate enterprise of shifting and hiding the assets of Titan (NJ). Defendants characterize plaintiff's veil-piercing allegations as perfunctory,

formulaic, and devoid of supporting factual allegations.  Finally, defendants argue that veil piercing from a corporation to its principals is allowed only under exceptional circumstances and that reverse veil piercing from principal to corporation is rarer still.  *See In re Blatstein*, 192 F.3d 88, 100-01 (3d Cir. 1999).

The factual allegations of the complaint "are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (internal citations and quotations omitted).  With respect to the first element of the veil-piercing test, plaintiff has specifically alleged that all of the corporate defendants were founded with little or no capital and are undercapitalized, that defendants failed to observe corporate formalities, that each of the corporate defendants was formed and managed by a member of the Farina family, and that all of the corporate defendants were operated with funds commingled with Titan (NJ).  Complaint ¶¶ 35-37, 41-49, 51-62.[1]  Plaintiff has also provided specific factual allegations indicating that many of the defendants have very limited functions and assets.  *Id*. at ¶¶ 36, 40-43.  These factual allegations squarely address the factors relevant to the first element of the veil-piercing test.  *See Marketvision*, 2011 U.S. Dist. LEXIS 46767 at *12.[2]

---

[1] Defendants argue that plaintiff cannot state a claim against any of the corporate defendants because doing so would require plaintiff to first pierce the veil between Titan (NJ) and the individual defendants and then reverse pierce the veil from the individual defendants to each corporate defendant.  However, the same factors apply to direct and reverse veil-piercing claims.  *See Repetti*, 2011 N.J. Super. Unpub. LEXIS 2390, at *15-17.  Accordingly, while plaintiff must allege facts sufficient to support its veil-piercing theory with respect to the veil between each corporate defendant and the individual defendants, the same factors and analysis apply without regard to the direction of the piercing.

[2] Defendants do not identify any cases reaching a contrary conclusion based on comparable factual allegations.  *Capital Investment Funding, LLC v. Lancaster Resources, Inc.*, 2009 U.S. Dist. LEXIS 51809 (D.N.J. June 17, 2009) and *Ford Motor Co v. Edgewood Props., Inc.*, 2008 U.S. Dist. LEXIS 84776 (D.N.J. Oct. 16, 2008) are distinguishable.  The *Capital* Court dismissed a veil-piercing claim against several individuals because no factual allegations relevant to those individuals were asserted regarding the factors courts consider when evaluating veil-piercing claims.  2008 U.S. Dist. LEXIS 51809 at *9-15.  The *Ford* Court rejected a veil-

With respect to the second element of the veil-piercing test, plaintiff has alleged that defendants siphoned assets from Titan (NJ) with the result that Titan (NJ) became insolvent. *Id.* at ¶¶ 64-65, 71-78, 80-88. "'[W]rongful diversion of corporate assets to or for controlling individuals at a time when the corporation is in financial distress . . . can justify piercing the corporate veil.'" *Trustees of the Nat'l Elevator Industry Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 198 (3d Cir. 2003) (quoting *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 23 (1st Cir. 1998)). Further, plaintiff has provided specific factual allegations supporting this theory. For example, plaintiff alleges that in 2005 and 2006, while the dispute between Titan (NJ) and plaintiff was ongoing, Farina Sr. caused defendants Harrison Professional, J. Five Realty, and Titan Realty to convey property to non-parties for a total of $13,625,000 and did not account for the resulting funds. Complaint at ¶¶ 66-69. Defendants argue that these sales are not relevant because they occurred before plaintiff obtained its judgments against Titan (NJ) and because they do not reflect the dissipation of assets by Titan (NJ). However, the dispute between plaintiff and Titan (NJ) began in 2005 and plaintiff alleges that Harrison Professional, J. Five Realty, and Titan Realty were all shell companies formed with Titan (NJ) funds that were controlled by Farina Sr. and that acquired the property in question either directly from Farina Sr. or using Titan (NJ) funds. *Id.* at ¶¶ 40-43, 67-69.

These factual allegations are sufficient to support plaintiff's veil-piercing theory. *See Marketvision*, 2011 U.S. Dist. LEXIS 46767 at *23-25; *Lutyk*, 322 F.3d at 195-99. Further, because a significant amount of information germane to plaintiff's veil-piercing theory is likely in defendants' exclusive possession, plaintiff is entitled to seek that information via "discovery to

---

piercing theory of liability because the plaintiff improperly attempted to assert that theory in its briefing without pleading it. 2008 U.S. Dist. LEXIS 84776, at *42-44 (observing that "Ford fails to plead the grounds upon which its alter-ego argument rests" and refusing to "treat Ford's briefing as its pleading"). Accordingly, *Capital* and *Ford* provide no guidance regarding the adequacy of the allegations presented by plaintiff in this case.

further develop the record, as [it] has set forth sufficient factual allegations to support [its] claims." *Marketvision*, 2011 U.S. Dist. LEXIS 46767 at *24-25; *see also Melikian v. Corradetti*, 791 F.2d 274, 282 (3d Cir. 1986). The heightened standard for pleading fraud is relaxed in circumstances where the information necessary to plead with particularity is concealed by defendants. *In re Craftmatic Securities Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 511 n.27 (D.N.J. 1999). Indeed, the Third Circuit has cautioned that "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud" and that "[p]articularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." *Craftmatic*, 890 F.2d at 645 (citations and quotations omitted). Accordingly, defendants' motion to dismiss must be denied.

**V.     ORDER**

For the foregoing reasons, defendants' motion to dismiss is **DENIED**.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.